UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TAHLIAH BARNETT P/K/A FKA TWIGS, | |
| Plaintiff, | Case No. 26-cv-2331 |
| v. | **COMPLAINT** |
| THE LAURA GOOD, LINDA GOOD PARTNERSHIP; LINDA GOOD; and LAURA GOOD, | **JURY TRIAL DEMANDED** |
| Defendants. | |

Plaintiff Tahliah Barnett p/k/a "FKA twigs" ("Plaintiff" or "Barnett"), by and through her

undersigned attorneys, complains and alleges against Defendants The Laura Good, Linda Good

Partnership, Linda Good, and Laura Good (collectively, "Defendants") as follows:

## NATURE OF THE ACTION

1.      This is an action for declaratory relief, seeking a declaration that:

- Barnett's use and registration of the word mark FKA TWIGS does not infringe

    Defendants' purported trademark rights in the name of their alternative, indie pop

    band named "The Twigs";

- Any purported claims that Defendants may assert are barred by the doctrines of

    laches, acquiescence, waiver, trademark misuse/unclean hands, and equitable

    estoppel due to, *inter alia*, Defendants' admitted knowledge of Barnett's use of

    the FKA TWIGS mark since at least as early as 2013; and

- Defendants' attempts to weaponize these barred and unmeritorious trademark

    claims—via a series of cease and desist letters threatening litigation, including

    threats to enjoin Barnett's use of her mark, in order to disrupt Barnett's over-a-

decade-long, uninterrupted use of the FKA TWIGS mark for Defendants' own gain—are improper and must cease.

2.      Barnett is an internationally-recognized, Grammy Award-winning recording and performing artist, model, and actor from the United Kingdom, with a global following that includes over 880,000 subscribers and more than 325 million views on YouTube, 2.6 million followers on Instagram, 3.2 million monthly listeners on Spotify, and 457,100 followers on X (formerly Twitter).  Her music is promoted and distributed through major digital streaming platforms, global media outlets, and high-profile artistic collaborations, reaching a fashion-forward and art-focused audience.

**<u>Non-Exhaustive Examples of Widely-Circulated Magazine Covers Featuring Barnett</u>**

  

3.      Defendants Laura and Linda Good are American twin sisters and musicians who comprise the alternative pop band "The Twigs."  As of the date of the filing of this Complaint, Defendants have 67 subscribers and 19,332 views on YouTube, 705 followers on Instagram, and 25 monthly listeners on Spotify.  Their promotional efforts appear to primarily center on grassroots and regional channels, such as independent music blogs and local performances. There are only three specific live performances in the past 25 years identified on the "Shows" tab

of Defendants' website, including their most recently marketed performance at "Wet Whistle Wines" in Brooklyn, New York, which, upon information and belief, is not a performance venue. *See* https://www.twigs.com/news/shows.

**Various Images of Defendants Laura and Linda Good, as Featured on Their Website**

  

4.      Since at least as early as 2013, Barnett has been openly and notoriously using the stage name "FKA twigs" as a recording and performing artist, model, and actor.  In addition, Barnett has made use of her FKA TWIGS mark in connection with music-related goods and services, including without limitation musical recordings and performances, music videos, merchandise, and more.  Defendants have long been aware of such use.

5.      Indeed, over a decade ago, in 2014, Defendants brought a trademark infringement claim against Barnett based on her use of the mark FKA TWIGS and her purported use of the term "twigs" alone, claiming likelihood of confusion between her stage name and their band's name.  *See Linda Elaine Good et al. v. Tahliah Barnett et al.*, Case No. 2:14-cv-02668-SVW-JCG (C.D. Cal.) (the "Prior Action").  The Complaint from the Prior Action is attached hereto as **Exhibit 1** (the "Prior Complaint").  The Prior Action garnered widespread media attention, including publicity for Defendants.  *See, e.g.*, "Inside the FKA Twigs v. Twigs Name Billboard," Billboard (Feb. 6, 2015), *available at* https://www.billboard.com/music/music-news/inside-the-fka-twigs-vs-twigs-name-battle-6465416/; "The Twigs Want FKA Twigs to Change Her Name

3

Again," The Fader (Feb. 6, 2015), available at https://www.thefader.com/2015/02/06/the-twigs-are-still-not-happy-about-fka-twigs.

6.      In that case, Defendants brought and lost a baseless injunction motion, seeking to prevent Barnett from using FKA TWIGS in connection with an upcoming concert.  Even at that time, Defendants' delay fatally undermined any alleged claim of irreparable harm, where they had been aware of Barnett's use of the mark, including in the United States, for months but waited until the eve of her scheduled performance in Los Angeles to seek purported emergency relief.  *See Linda Elaine Good et al. v. Tahliah Barnett et al.*, Case No. 2:14-cv-02668-SVW-JCG (C.D. Cal. Apr. 10, 2014), ECF No. 21 (the "Prior Order").  The Prior Order is attached hereto as **Exhibit 2**.

7.      Having subjected Barnett to that patently frivolous litigation exercise and expense, Defendants then filed a voluntary notice of dismissal of their case and claims, and took no further action; they simply disappeared.

8.      For approximately ten years thereafter, Defendants neither contacted Barnett nor challenged her use of FKA TWIGS, fully acquiescing to such use such that Defendants are barred from asserting claims of likelihood of confusion or trademark infringement related to their THE TWIGS marks.

9.      In the face of Defendants' silence during those ten years, Barnett invested extraordinary time, effort, and resources building a successful career and brand under the FKA TWIGS name.

10.     These efforts bore fruit.  Barnett became widely regarded as one of the most innovative artists of her generation, building a career defined by artistic ambition, critical acclaim, and an unwavering work ethic.  Her albums have received multiple nominations and

wins at major music awards, including a Grammy Award for "Best Dance/Electronic Album" in connection with her project "Eusexua" in February of this year.  She has been lauded on numerous "Album of the Year" lists in leading publications, and, based on her successful brand, enjoys collaborations with some of the world's most prominent fashion and luxury brands. Alongside this, she has headlined major international music festivals, cementing her reputation as a singular and influential creative force.

11.    It is inconceivable that any member of the relevant consuming public could confuse Barnett's offerings with those of Defendants or believe that the parties are affiliated or related to each other.  In the more than a decade that Barnett and Defendants have co-existed, there is not a shred of credible evidence of actual confusion between their respective offerings. That is unsurprising.  The parties operate in entirely different commercial ecosystems: Defendants are an alternative indie pop duo with limited recognition and minimal (if any) recent activity, whereas Barnett is a globally recognized music artist whose creative work spans music, film, modeling, and art, with a distinct aesthetic, audience, and sound profile.  The parties' respective markets, audiences, and branding are fundamentally different.

12.    Nevertheless, Defendants have now once again sought to interfere with Barnett's rights, wholly ignoring the above-referenced history, sending cease and desist letters demanding that Barnett cease the use and any registration of her FKA TWIGS mark on the purported ground that such activity infringes Defendants' alleged trademark rights.

13.    Defendants specifically have threatened to seek an injunction preventing Barnett from using her stage name, demanded a significant seven-figure payout to release any alleged claims against Barnett, and are seeking an order from the Trademark Trial and Appeal Board ("TTAB") preventing Barnett from registering her FKA TWIGS mark.

14.  Defendants' threats of litigation and active challenge to Barnett's use of her FKA TWIGS mark and the proceedings before the TTAB to block Barnett's trademark registration have created an actual and live controversy as to the parties' respective rights to use or register trademarks that include the word "twigs."

15.  Because Barnett's use of her FKA TWIGS mark is unlikely to cause consumer confusion, and because any claims against Barnett by Defendants relating to Barnett's use and/or registration of her stage name are barred by laches, waiver, acquiescence, trademark misuse/unclean hands, and equitable estoppel, and are improperly motivated by Defendants' desire to suppress competition, monopolize the use of the term "twigs" in entertainment despite not having the legal right to do so, and to interfere with Barnett's legitimate business opportunities, Barnett is entitled to a judicial declaration that she has not infringed Defendants' alleged trademarks; that any purported claims by Defendants are equitably barred; that Barnett is entitled to have her pending trademark applications mature to registration.

## THE PARTIES

16.  Plaintiff Tahliah Barnett p/k/a FKA twigs is a citizen of the United Kingdom with her principal place of business in the City of London, United Kingdom.

17.  Upon information and belief, Defendant The Laura Good, Linda Good Partnership is an unincorporated association or "partnership" consisting of Defendants Laura Good and Linda Good, which has held itself out as a Virginia partnership with an address in Charlottesville, Virginia, but which is not registered and does not have any presence on the Virginia Secretary of the Commonwealth's website.

6

18.     Upon information and belief, Defendant Laura Elizabeth Good is an individual residing in the Commonwealth of Virginia, who, upon information and belief, regularly conducts business in New York.

19.     Upon information and belief, Defendant Linda Elaine Good is an individual residing in Los Angeles, California, who, upon information and belief, regularly conducts business in New York.

## JURISDICTION AND VENUE

20.     This is an action for declaratory relief, arising under the Lanham Act, 15 U.S.C. § 1051 *et seq.*, and the Declaratory Judgment Act, 28 U.S.C. § 2201.

21.     This Court has subject matter jurisdiction over Barnett's claims for declaratory relief pursuant to 28 U.S.C. §§ 1331 and 1338 because the claims arise under and require interpretation of the trademark laws of the United States.

22.     This Court has personal jurisdiction over Defendants because, upon information and belief, Defendants regularly conduct, solicit, and/or transact business in this District; purposefully direct their activities at the State of New York; and have purposefully availed themselves of the benefits of doing business in New York, including by, *inter alia*:

   a. Performing live shows at venues in New York, including at CBGB's and the Mercury Lounge in New York City, and continuing to promote and exploit those New York performances in commerce and rely on them in filings with the TTAB challenging Barnett's mark;

   b. Entering into contracts with New York-based venues, promoters, and ticketing agents for the performance of live shows in New York;

c. Deriving revenue from ticket sales, merchandise sales, and related commercial benefits from activities occurring in New York;

d. Marketing and performing specific shows in New York, including their most recently marketed performance at "Wet Whistle Wines" in Brooklyn, New York, on June 13, 2025;

e. Producing the stage musical "Ladyship," which premiered Off-Broadway at The Alice Griffin Jewel Box Theater as part of The New York Musical Festival, and frequently causes Defendants to conduct business in New York, as shown in the screenshots below from Defendants' various Instagram posts (all red rectangles added to illustrations for emphasis):

 







f.   Representing themselves as being "located" in New York City, as shown in the illustration below from the website for the Alliance for Women Film Composers (*see* https://www.theawfc.org/user/linda-good/); and



**Linda Good**

Linda Good is a composer and multi-instrumentalist who has toured the world as a keyboardist with an eclectic mix of hard rock to electronic bands including Jane's Addiction, The Mars Volta and her own band, The Twigs. Composer/Librettist/Book Writer for the musical Ladyship and finalist for the Richard Rodgers Award in Musical Theater 2020. Her composing, production and singing credits include placements on True Blood, American Teen, Entourage as well as on national ad campaigns.

| Location | Additional Location |
|---|---|
| Los Angeles | NYC, DC, Chicago |

g.   Sending cease and desist letters to Barnett and her representatives in New York, threatening litigation and seeking to prevent her use of the FKA TWIGS mark, thereby creating a justiciable controversy in this District.

23.   Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims occurred in this District, including Defendants' commercial activities in New York and their threats directed to Barnett in this District.

## FACTUAL ALLEGATIONS

### Defendants' Use of the Band Name "The Twigs"

24.   Defendants Laura and Linda Good are twin sisters who are the sole members of the band "The Twigs."

10

25.    Defendants describe their musical style as containing "ethereal vocal harmonies, crunchy guitars and dreamy piano lines mix[ed] with retro grooves." *See* https://www.twigs.com/.

26.    The "Discography" section of Defendants' website, located at the URL https://www.twigs.com/music, identifies only three full-length albums that Defendants have released since their band's alleged formation in 1996.

27.    Their first album, "Bring Me the Head of Eternity," was released in 1996.

28.    Their second album, "The Universe Tonight," was released 25 years ago, in 2001.

29.    Defendants' third album, "Jump Right In" (released in 2013), is a children's album.  It features songs with titles such as "Time to Sleep," "Pretty Ponies," and "Blueberry Jam."

30.    Only "The Universe Tonight" and "Jump Right In" are available on streaming platforms Spotify and Apple Music.

31.    Upon information and belief, Defendants' use of the THE TWIGS marks in connection with musical recordings and live performances has been sporadic and very limited, with extended periods of little to no commercial activity, and does not reflect continuous use in the ordinary course of trade.

### Barnett's Use of the Stage Name "FKA Twigs"

32.    Barnett has invested extraordinary time, effort, and resources building a successful career and brand under the FKA TWIGS name.

33.    In or around 2013, Barnett began performing using the FKA TWIGS mark.

34.     For example, in or around September 2013, Barnett released a commercial recording entitled "EP 2" using her FKA TWIGS mark that is sold in the United States through iTunes, Amazon, and other outlets in physical and digital formats.

35.     Barnett advertised her first North American music concert using the FKA TWIGS mark, which took place on April 10, 2014, at the Masonic Lodge at the Hollywood Forever Cemetery in Los Angeles, California.

36.     That same year, Barnett was also featured in media coverage under her mark FKA TWIGS, including the publications shown below:

| *Interview* **Article, dated March 13, 2014** | *Dazed* **Article, dated June 19, 2014** |
| --- | --- |
|  |  |

37.     After Barnett's debut album LP1 (2014) was met with universal critical praise and earned multiple "album of the year" placements from major publications, her subsequent projects such as MAGDALENE (2019) and the mixtape CAPRISONGS (2022) further cemented her reputation as a creative force.

38.    In building her brand over the past decade, Barnett has collaborated with major global brands, including Apple, Nike, Google, Calvin Klein, and Facebook.

39.    Barnett has performed at major internationally recognized music festivals, including Coachella Valley Music and Arts Festival in 2015, the Glastonbury Festival in 2015, and Primavera Sound in 2015.

40.    Barnett has received widespread critical acclaim for her musical works.  In 2015, Barnett was nominated for "British Female Solo Artist" and "British Breakthrough Act" at the BRIT Awards, the UK's most prestigious annual music awards, celebrating the best British and international talent in pop, rock, and dance music.

41.    The music video for her song "Cellophane" was nominated for "Best Music Video" at the 62nd Annual Grammy Awards (2020).  At that same ceremony, which was telecast to over 18.7 million viewers, Barnett appeared in a tribute performance honoring Prince, alongside musical artists Usher and Sheila E.

42.    At the 68th Annual Grammy Awards, held on February 1, 2026, Barnett won her first Grammy Award, taking home the "Best Dance/Electronic Album" for her critically acclaimed project "Eusexua."

**Barnett Accepting her Best Dance/Electronic Album Grammy Award for Eusexua**



43.    Barnett has also received significant attention from the press for her musical contributions.  For example, Pitchfork listed her album "MAGDALENE" as the second best album of 2019.  *See* https://pitchfork.com/features/lists-and-guides/best-albums-2019/.  Her third studio album, "Eusexua," garnered her a feature in the New York Times as a "Critic's Pick."  *See* https://www.nytimes.com/2025/01/23/arts/music/fka-twigs-eusexua-review.html.

44.    Barnett has also secured and pursued trademark protection for the FKA TWIGS mark in multiple jurisdictions worldwide.  In addition to her pending U.S. application (U.S. Serial No. 98/325,539, discussed *infra* ¶ 45), Barnett owns registrations for the FKA TWIGS mark in the United Kingdom (Reg. No. UK00004023132), the European Union (Reg. No. 019009811), Japan (Reg. No. 6849718), and China (Reg. No. 78753189).  These registrations reflect Barnett's continued and widespread use of the FKA TWIGS mark.

45.    On or about December 21, 2023, Barnett filed U.S. Trademark Application Serial No. 98/325,539 seeking registration of the mark FKA TWIGS in International Classes 25, 35, and 41 (the "Registration Application"), based on her longstanding use of the mark in commerce in the United States.  The Registration Application covers, *inter alia*, clothing, modeling services

relating to fashion products, and entertainment services including live musical performances and related artistic activities.

**Defendants' 2014 Litigation Against FKA Twigs**

46.    In or around 2013, Defendants became aware that Barnett released a commercial recording entitled "EP 2" using the FKA TWIGS mark. *See* Prior Complaint ¶ 32 ("in or about September 2013 . . . Barnett released a commercial recording entitled 'EP 2' under 'FKA Twigs' that is sold in the United States through iTunes, Amazon and other outlets in physical and digital formats.").

47.    On or about August 30, 2013, Defendants sent Barnett a cease and desist letter (the "August 30, 2013 Cease and Desist Letter"), detailing their awareness of Barnett's alleged use of the FKA TWIGS mark. The August 30, 2013 Cease and Desist Letter (as filed in the Prior Action) is attached hereto as **Exhibit 3**.

48.    Thereafter, Defendants "also notified iTunes, Facebook and bandcamp.com and indie websites" that Barnett was allegedly infringing their marks. *See* Prior Complaint ¶ 34.

49.    On April 8, 2014, Defendants filed a trademark infringement action against Barnett and related defendants in the United States District Court for the Central District of California, captioned *Linda Elaine Good et al. v. Tahliah Barnett et al.*, Case No. 2:14-cv-02668-SVW-JCG (C.D. Cal.) (*i.e.*, the Prior Action).

50.    Defendants alleged, in pertinent part, that Barnett "released her first commercial recordings on or about December 4, 2012" and that FKA twigs "advertised her first North American music concert under the name 'FKA Twigs' to take place April 10, 2014." Prior Complaint ¶ 7.

15

51.     Unquestionably, at that time, Defendants were already aware of Barnett's use of her FKA TWIGS mark, and claimed to be suffering damage as a result of such use.

52.     The district court denied Defendants' request for a temporary restraining order seeking to enjoin Barnett's use.  *See* Prior Order.  The court concluded that Defendants had not demonstrated a likelihood of irreparable injury and further observed that Defendants' delay in seeking emergency relief undermined their claim of irreparable harm.

53.     Shortly thereafter, Defendants voluntarily dismissed the action without prejudice. *See* Notice of Voluntary Dismissal, *Linda Elaine Good et al. v. Tahliah Barnett et al.*, Case No. 2:14-cv-02668-SVW-JCG (filed Apr. 15, 2014), ECF No. 22 (attached hereto as **Exhibit 4**).

### The Current Dispute

54.     For nearly a decade after the above-referenced adverse ruling and voluntary dismissal of Defendants' trademark infringement claim against Barnett, Barnett heard nothing from Defendants.

55.     During that time, Barnett continued to make substantial investments of her time, effort, and resources developing her career and brand using the FKA TWIGS mark.  *See supra* ¶¶ 32–45.

56.     Then, out of nowhere, on May 17, 2024, Barnett received a cease and desist letter from Defendants (the "May 17, 2024 Cease and Desist Letter").  The May 17, 2024 Cease and Desist Letter is attached hereto as **Exhibit 5**.

57.     This letter asserted (again) that Barnett's performances and distribution of music under her mark FKA TWIGS infringe Defendants' purported rights in their THE TWIGS marks (which cover, *inter alia*, music-related recordings and entertainment services related to band performances in International Classes 9 and 41, U.S. Registration Nos. 2,003,136 and 4,683,985,

16

respectively; collectively, "The Twigs Marks"), despite acknowledging that Defendants have known about Barnett's use of the FKA TWIGS mark since 2013.  This letter did not make any mention of the Registration Application.

58.     The letter also referenced one-off examples where third parties informally referred to Barnett as "Twigs."

59.     Defendants claimed via their letter that Barnett's use of her FKA TWIGS mark is likely to cause confusion among relevant consumers about an association between Barnett and Defendants, but did not reference any alleged confusion caused despite the parties' over-a-decade-long co-existence.  That is because there is none.

60.     Defendants also claimed via their letter that Barnett's use of the FKA TWIGS mark "will result" in damage to Defendants' "well-established reputation and goodwill" (Exhibit 5), but did not reference any damage already caused during the parties' over-a-decade-long co-existence.  That is because there is none.

61.     Defendants threatened via their letter that if Barnett did not cease and desist from any and all use of her FKA TWIGS mark, *i.e.*, her stage name since at least as early as 2013, they would "initiate legal proceedings against Ms. Barnett to obtain both damages and injunctive relief."  Exhibit 5.

62.     Barnett's Registration Application proceeded through examination before the United States Patent and Trademark Office and was approved for publication on May 19, 2025.

63.     On June 24, 2025, the mark subject to the Registration Application was published for opposition in the Trademark *Official Gazette*.

64.     In October of 2025, Defendants sent Barnett another cease and desist letter, this time objecting to both Applicant's use *and registration* of the FKA TWIGS mark (the "October

1, 2025 Cease and Desist Letter"). The October 1, 2025 Cease and Desist Letter is attached hereto as **Exhibit 6**.

65. Each cease and desist letter on behalf of Defendants has been sent by different counsel. The August 30, 2013 Cease and Desist Letter was sent by Victor K. Sapphire of Novak Druce Connolly Bove & Quigg LLP. The May 17, 2024 Cease and Desist Letter was sent by John M. Begakis of Alt View Law Group. The October 1, 2025 Cease and Desist Letter was sent by David I. Greenbaum of Rimon PC. Defendants also had different counsel, Lisa J. Borodkin, a solo practitioner, represent them in the Prior Action.

66. Via the October 1, 2025 Cease and Desist Letter, Defendants asserted that the USPTO committed "an obvious mistake in examination" allowing the Registration Application to advance to publication. *See* Exhibit 6.

67. Specifically, Defendants asserted that Barnett's use and registration of the FKA TWIGS mark infringes or is likely to cause confusion with Defendants' asserted THE TWIGS Marks. *See* Exhibit 6.

68. Defendants further implied that Barnett might use registration of her FKA TWIGS mark "to assert claims against the Group or block its expansion[.]" Exhibit 6.

69. But Barnett has never—and never intended to—"assert claims" against or "block [Defendants'] expansion[.]" Exhibit 6. At all times, Barnett has never objected to Defendants' use and has had no issue with the decade-long co-existence of the parties.

70. Defendants' letter asserts that Barnett's use of her FKA TWIGS mark has led to Defendants being "drowned out in search engine and streaming platform results, where 'Twigs' often leads to [Barnett's] content." Exhibit 6.

18

71.    Initially, Defendants' purported rights are to the band name "The Twigs," not the term "twigs."  They cannot commandeer a common word in the English language.

72.    In addition, when Defendants' actual purported trademark—"The Twigs"—is searched on YouTube, as shown below, the first organic search results are not for Barnett.  They are primarily for a third-party band named "The Lemon Twigs," and also Defendants, as shown below:



73.    Barnett and Defendants continued to correspond concerning this dispute via email.  The true motive behind Defendants' purported claims became clear when they made a seven-figure demand—for the *status quo* of co-existence.

74.     Thereafter, in December of 2025, Defendants initiated a proceeding before the TTAB (Opposition No. 91303922; the "Opposition Proceeding") formally opposing Barnett's Registration Application for the FKA TWIGS mark, asserting that registration of the FKA TWIGS mark is likely to cause confusion with Defendants' asserted rights in its THE TWIGS Marks.

75.     The Opposition Proceeding is currently pending before the USPTO.

76.     Defendants' continued threats to seek injunctive relief and monetary damages against Barnett, as well as Defendants' Opposition Proceeding, have created a concrete dispute between the parties regarding Barnett's right to use and register the FKA TWIGS trademark in connection with her offerings.  Declaratory relief will serve to clarify the scope of each party's legal rights with respect to Barnett's use of the FKA TWIGS mark.

**<u>Defendants' Inexcusable Delay in Asserting Their Purported Trademark Rights</u>**

77.     As explained above (*supra* ¶¶ 46–53), Defendants have known of Barnett's use of the FKA TWIGS mark since at least 2013.  In or about June 2013, Defendants acknowledged Barnett's use of the mark and asserted purported objections to that use.

78.     In April 2014, Defendants filed a lawsuit against Barnett based on that same use and sought emergency injunctive relief.  The court denied Defendants' request for a temporary restraining order, and Defendants voluntarily dismissed the action without prejudice shortly thereafter.

79.     Following dismissal of the 2014 action, Defendants did not pursue any further legal action against Barnett for approximately a decade.

20

80.     During that period, Barnett openly and continuously used the FKA TWIGS mark in commerce in the United States and internationally, including in connection with recorded music, live performances, media appearances, and commercial collaborations.

81.     During that same period, Barnett expanded the scope and reach of her brand under the FKA TWIGS name, achieving widespread public recognition and substantial commercial success.

82.     Defendants were aware of Barnett's continued use of the FKA TWIGS mark throughout this period but did not take any steps or actions whatsoever to challenge that use.

83.     In reliance on Defendants' inaction, Barnett continued to invest significant time, effort, and resources in developing and promoting her brand under the FKA TWIGS name.

84.     Defendants did not make any objection to Barnett's use of the FKA TWIGS mark following their lawsuit in 2014 until 2024, first raising an objection more than a decade after acquiring knowledge of the FKA TWIGS mark in correspondence in 2024 and 2025 and in the filing of a TTAB opposition in December 2025.

## In All Events, There is No Likelihood of Confusion

85.     Barnett is informed and believes, and on that basis alleges, that reasonable and sophisticated consumers of music and related goods would not be likely to confuse Defendants and their offers with Barnett and her offerings.  Indeed, because the musical acts are so different in style and appearance; are marketed very differently; appeal to and are listened to by different consumers; are not sold in the same channels of trade; and use the word "twigs" in different manners, a consumer of Defendants' offerings would not be likely to believe that Barnett is associated with Defendants or that Defendants are associated with Barnett.

86.    Below are illustrations of two of Defendants' three album covers, which portray the band as perky and upbeat:

**Defendants' Album Cover for "The Universe Tonight"**



**Defendants' Album Cover for "Jump Right In"**



87.    Barnett's album covers, on the other hand, evoke pain, vulnerability, and complex emotions, as shown in the illustrations below of certain of Barnett's album covers:

**Barnett's Album Cover for "LP1"**



**Barnett's Album Cover for "Eusexua Afterglow"**



88.     Barnett is informed and believes, and on that basis alleges, that consumers are unlikely to be confused between the parties' respective offerings because the overall visuals of their album covers convey entirely different artistic identities, making it unlikely that a consumer would mistake one for the other at the point of purchase or listening.

89.     Barnett is informed and believes, and on that basis alleges, that Defendants have at all relevant times marketed their musical act as having *two members* who are twin sisters, and most if not all of their marketing materials and album art feature both Good sisters.

90.     Below are illustrations of Defendants' marketing:





**THE TWIGS**

Twins **Laura** (left) and **Linda** Good's new CD, *The Universe Tonight*, features Sixties-influenced sounds and grooves mixed with modern samples and shimmering vocal harmonies. The album was produced by platinum-selling producer Johnny K. For more info: www.twigs.com.



91.    By contrast, all of Barnett's social media, marketing, and album art makes clear that she is a solo artist.  Below are illustrations of Barnett's such materials:







92.     Barnett is informed and believes, and on that basis alleges, that Defendants' band name "The Twigs" is one of many musical artists and/or bands in a crowded field using the common term "twigs" in their name.

93.     Barnett is informed and believes, and on that basis alleges, that other musical acts using the term in their name (with some even predating Defendants' use) include, for example, The Twig (1960s), Colour Twigs (1980s–2000s), Twig (1990s), The Twigs (1990s), Twig (2000s), Twig Palace (2008–2011), and The Lemon Twigs (formed in 2014).

94.     Barnett is informed and believes, and on that basis alleges, that The Twigs (1960s) was a Liverpool Merseybeat band that regularly played legendary venues in Liverpool, London and across the United Kingdom.  Below is a picture of the band:



95.     Barnett is informed and believes, and on that basis alleges, that Colour Twigs (1980s–2000s) was an early 1980s Seattle psychedelic new wave band formed by Tor Midtskog and Gordon Raphael.  Gordon Raphael later went on to become the producer for The Strokes. Below is an illustration of the cover artwork for the self-titled album *Colour Twigs*:



96.     Barnett is informed and believes, and on that basis alleges, that Twig (1990s) was a female-fronted indie rock band from Boston active from 1992 to 1996, featuring Trisha

Matthews, Julie Kantner, Niels LaWhite, and Ramona Herboldsheimer.  They released two

singles on Harriet Records: "Fall of Love"/"Riff" and "I Never Knew"/"Parade".  Below is an

illustration of the band:



97.    Barnett is informed and believes, and on that basis alleges, that The Twigs

(1990s) was a Texas based alternative rock band featuring Robert Kyle, Chris Lowe, and Charles

Martin, as shown below:



98.     Barnett is informed and believes, and on that basis alleges, that Twig (2000s) was a Stockholm-based pop band consisting of Henrik Lindén, Mathias Nilsson, and Joakim Bengtsson. The group started out as Laura Drum but later changed their name to Twig Palace. Their debut album, *Life After Ridge*, was released on Plastilina Records in the summer of 2008. Below is an illustration of the cover artwork for the album *Life After Ridge*:



99.     Barnett is informed and believes, and on that basis alleges, that Twig Palace (2008–2011) was a late-2000s Olympia, Washington indie pop duo formed in 2008 by Colleen Johnson and Evan Hashi.  Active until 2011, the pair created playful retro-pop songs and self-released DIY recordings on CD-R and cassette, later compiled on the 2020 album *Your Most Secret Name*.  Below is an illustration of the cover artwork for the self-titled album *Twig Palace*:



100.    Barnett is informed and believes, and on that basis alleges, that The Lemon Twigs (2014–present) are a New York-based psychedelic pop/rock band formed in 2014 by brothers Brian and Michael D'Addario. The multi-instrumentalist siblings are known for their baroque, glam, and power-pop sound heavily inspired by 1960s and 1970s music.  Below is an illustration of cover artwork for the band's single "I Just Can't Get Over Losing You":



101.    These third-party musical acts' use of the term "twigs" in their title has been open and obvious.  For example, The Lemon Twigs have released five studio albums and have been featured in major music publications.  They have performed at the following music festivals: Coachella (2017), Lollapalooza (2017), Austin City Limits Festival (2017), Glastonbury Festival (2017), Outside Lands (2017 and 2024), SXSW (2023), Primavera Sound (2024), Bonnaroo (2025), and Governors Ball (2025).  They are commencing a world tour starting in April of 2026.

102.    Defendants' claim to have exclusive rights to use the term "twigs" in connection with a musical act is without merit, as evidenced by the past and current crowded field of "twig"-formative names.

103.    Despite the existence of bands with the term "twigs" in their title pre-dating and co-existing with Defendants, Linda Good declared under penalty of perjury in the Prior Action that she "realize[s] the importance of having a band name that [i]s identified exclusively with [their] music" and "[would] not want another musician to come along and use [a] name or some

31

derivation of [a] name and erode the identity and goodwill" of that band.  Declaration of Linda Good filed in the Prior Action ¶ 5 (attached hereto as **Exhibit 7**).

104.    Defendants nonetheless ignored any trademark rights of the "twig"-formative band names pre-dating them.  *Id.*

105.    Barnett is informed and believes, and on that basis alleges, that Defendants have not initiated any proceedings against any of these other bands to assert Defendants' purported trademark rights in the term "twigs."  For some reason, Barnett is their only target.

106.    Barnett is informed and believes, and on that basis alleges, that, in connection with Defendants' offerings, the term "twigs" is never used alone; rather, it is always preceded by the word "the."

107.    By contrast, in most if not all authorized uses by Barnett of the FKA TWIGS mark, the term "twigs" is always preceded by the capital letters "FKA."

108.    Following is an illustration of the parties' respective marks as they appear in the marketplace; specifically, on each party's Spotify homepage:

**Barnett's Spotify Homepage**                    **Defendants' Spotify Homepage**

                              

109.    Barnett is informed and believes, and on that basis alleges, that the term "twigs" has not acquired secondary meaning as a source identifier for Defendants' offerings and that the consuming public does not associate the word "twigs" with Defendants.  To the contrary, the word "twigs" is a phrase that is used by many musical acts.

110.    The term "twigs" is conceptually weak and diluted in the marketplace, as reflected by widespread third-party use by other musical artists and bands, which further reduces any likelihood that consumers would associate that term exclusively with Defendants.

## COUNT I
### For a Declaration of Non-Infringement Under the Lanham Act
### (15 U.S.C. § 1125(a))

111.    Barnett realleges and incorporates by reference each and every allegation contained in each of the preceding paragraphs of the Complaint with the same force and effect as if fully set forth at length herein.

112.    By reason of the foregoing, any purported claim of trademark infringement or likelihood of confusion between FKA TWIGS and THE TWIGS asserted by Defendants is barred by the doctrines of laches, acquiescence, waiver, trademark misuse/unclean hands, and equitable estoppel due to Defendants' admitted knowledge of Barnett's use of the mark since at least as early as 2013.

113.    Defendants' claims are barred by laches, waiver, and acquiescence because Defendants had knowledge of Barnett's use of the FKA TWIGS mark since at least 2013, unreasonably delayed in asserting their rights, and Barnett has suffered material prejudice as a result of that delay.

114.    Defendants' conduct—including their decade-long delay in asserting their purported rights, their attempt to extract an outsized monetary payment, and their assertion of rights beyond the scope of their actual use—constitutes inequitable conduct that bars their claims under the doctrines of trademark misuse/unclean hands and equitable estoppel.

115.    Defendants have acquiesced in Barnett's use of the FKA TWIGS mark through their prolonged inaction and failure to pursue enforcement after initiating and voluntarily dismissing the Prior Action.

116.    Defendants' attempts to weaponize their purported trademark claims—via a series of cease and desist letters threatening litigation, including threats to enjoin Barnett's use of her mark, in order to disrupt Barnett's over-a-decade-long, uninterrupted use of the FKA TWIGS mark for Defendants' own gain—further bar Defendants' claims under the doctrine of trademark misuse/unclean hands.

34

117.    Defendants' inequitable conduct—including their delay, their attempt to extract a substantial monetary payment, and their assertion of rights beyond the scope of their actual use—bars them from obtaining equitable relief.

118.    By reason of the foregoing, an actual and justiciable controversy has arisen and now exists between Barnett, on the one hand, and Defendants, on the other hand, regarding whether Barnett's use and registration of the mark FKA TWIGS is likely to cause consumer confusion as to the origin of goods and services offered by Barnett or to mislead the public into believing that Barnett is affiliated with, sponsors, or endorses Defendants' offerings, or that Defendants are affiliated with, sponsor, or endorse Barnett's offerings.

119.    Barnett requests a judicial declaration regarding the parties' respective rights with respect to the use and registration of the mark FKA TWIGS.  Such a declaration is necessary and appropriate because a substantial controversy exists between the parties having adverse legal interests, and it is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

## JURY TRIAL DEMAND

120.    Barnett requests a trial by jury on all issues so triable of right pursuant to Fed. R. Civ. P. 38.

## PRAYER FOR RELIEF

WHEREFORE, Barnett respectfully requests that this Court enter judgment in her favor and against Defendants:

1.    Declaring that Barnett's use of the FKA TWIGS mark does not infringe, and at all times has not infringed, any existing and valid trademark rights of Defendants under the Lanham Act, 15 U.S.C. § 1125(a);

2.      Declaring that Barnett's use of the FKA TWIGS mark is not likely to cause, and has not caused, confusion, mistake, or deception as to the affiliation, connection, or association of Defendants with Barnett's goods and services, or as to the origin, sponsorship, or approval of Barnett's goods and services by Defendants under the Lanham Act, 15 U.S.C. § 1125(a);

3.      Declaring that Defendants' purported assertions of trademark infringement and contentions of likelihood of confusion are barred by the doctrines of laches, acquiescence, equitable estoppel, trademark misuse/unclean hands, and/or waiver;

4.      Declaring that Barnett's pending application for registration of the mark FKA TWIGS may proceed to registration;

5.      Ordering that Defendants, and their officers, directors, employees, agents, affiliates, attorneys, representatives, and licensees, be enjoined and permanently restrained from interfering with Barnett's use and registration of the FKA TWIGS mark and from opposing, seeking to cancel, or otherwise objecting to any federal registrations and applications for registration of such mark;

6.      Awarding Barnett her reasonable attorney's fees and costs; and

7.      Granting Barnett such other and further relief as the Court may deem just and proper.

DATED:  New York, New York
        March 20, 2026

MITCHELL SILBERBERG & KNUPP LLP


By: /s/ Christine Lepera
    Christine Lepera (ctl@msk.com)
    Lindsay Edelstein (lre@msk.com)
    Samantha W. Frankel (swf@msk.com)
    437 Madison Ave., 25th Floor
    New York, New York 10022-7001
    Telephone: (212) 509-3900
    Facsimile: (212) 509-7239

    *Attorneys for Plaintiff Tahliah Barnett*
    *p/k/a FKA twigs*