UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

TAHLIAH BARNETT P/K/A FKA TWIGS,

               Plaintiff,

        v.

THE LAURA GOOD, LINDA GOOD
PARTNERSHIP; LINDA GOOD; and LAURA
GOOD,

               Defendants.

Case No. 1:26-CV-02331 (JSR)

---

## DEFENDANTS' ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS

Plaintiff's Complaint effectively claims that Plaintiff has successfully used her celebrity to overwhelm Defendant's pre-existing trademark rights, and she asks this Court to reward her for doing so by ruling Defendants no longer have such rights. Defendants The Laura Good, Linda Good Partnership, Linda Good, and Laura Good (collectively, "Defendants"), by and through undersigned counsel, answer Plaintiff's Complaint and file the following counterclaims against her.  The claims in Plaintiff's Complaint should be denied and this Court should rule in Defendants' favor on all the claims in Barnett's Complaint and Defendants' Counterclaims for the reasons stated below.

### ANSWER
**Admissions and Denials**

1.     Defendants admit the allegations of paragraphs 18-23, 25, 27-29, 46, 48-50, 53, 62-64, 66-68, 70, 74-75, and 90 of the Complaint, and admit the authenticity of Exhibits 1-7 thereto.

1

2.      With regard to the allegations of paragraphs 2-4, and 77 of the Complaint, Defendants admit that they have performed as "The Twigs"  since 1994 and obtained U.S. trademark registrations in that mark in 1996, admit that Plaintiff has used the stage name "Twigs" and, after Defendants objected to Plaintiff's use of that name to identify her musical services, "FKA Twigs" since late 2013 with knowledge of  Defendants' rights in their "The Twigs" marks, admit that  Plaintiff has become an internationally recognized artist with substantial platform followings after she began using "Twigs" and "FKA Twigs" with knowledge that she was using  a mark substantially similar to Defendants' "The Twigs" marks over Defendants' objections, and denies the remaining allegation in those paragraphs. Further, Defendants lack information and belief sufficient to admit or deny the specific allegations about Plaintiff in paragraph 2, and the statistics and website information in paragraph 3, and therefore deny those allegations, and deny the remaining allegations in those paragraphs.

3.      With regard to the allegations of paragraphs 5-7, 51-53, and 78 of Plaintiff's Complaint, Defendants admit they filed suit against Plaintiff in 2014 for trademark infringement in the United States District Court for the Central District of California (the "California Action") admit that the complaint in that action speaks for itself, admit that the trial court in that action ruled that Defendants might prevail on the merits in that action but denied Defendants a temporary restraining order because it found an eight-day delay in pursuit of that emergency relief, admit that Defendants thereafter dismissed that action without prejudice, and deny the remaining allegations in those paragraphs.

4.       With regard to the allegations of paragraphs 12, 13 and 47 of the Complaint, Defendants admit they sent the cease-and-desist letter attached as Exhibit 5 (which letter speaks for itself and Defendants deny any allegations inconsistent therewith), admit they filed a notice

of opposition for the proposed "FKA Twigs" mark in the same Class 41 as Defendants possessed in their THE TWIGS® mark with the Trademark Trial and Appeals Board in December 2025 (which notice speaks for itself and Defendants deny any allegations inconsistent therewith), admit they sought to settle the parties' dispute over Plaintiff's use of and effort to obtain a federal trademark registration for  a mark substantially similar to Defendants' THE TWIGS® marks in the same line of commerce as Defendants used those marks, and deny the remaining allegations in those paragraphs.

5.      With regard to the allegations of paragraphs 17 and 24 of the Complaint, Defendants admit that Laura Good and Linda Good are twin sisters and they have performed as the sole members of their band named "The Twigs"  and that the Laura Good, Linda Good Partnership is the owner of U.S. Trademark Reg. Nos. 2,2003.136 and 4,683, 985 for THE TWIGS® marks in live and recorded musical performances and other entertainment services as permitted in Classes 9 and 41 of the U.S. Patent and Trademark Office, and deny the remaining allegations in those paragraphs.

6.      With regard to the allegations of paragraphs 56-58 of the Complaint, Defendants admit that they sent a cease-and-desist letter to Plaintiff on May 17, 2024 (which speaks for itself, and Defendants deny any allegations inconsistent therewith), admit that said letter referenced third-party uses of "Twigs" and stated that "[s]uch improper and unauthorized use infringes upon and dilutes the value of the Marks, and will result in damage to the Group's well-established reputation and goodwill" and stated that "[s]hould Ms. Barnett fail to timely comply with this demand, please be advised that the Group will be forced to initiate legal proceedings against Ms. Barnett to obtain both damages and injunctive relief(,)" and deny the remaining allegations in those paragraphs.

7.      With regard to the allegations of paragraphs 59-61, Defendants admit sending the letter described therein (which letter speaks for itself and Defendants' deny any allegations inconsistent therewith) and deny the remaining allegations in those paragraphs.

8.      With regard to the allegations of paragraph 65 of the Complaint, Defendants admit that the identified counsel sent letters dated as identified in that paragraph (each of which is an exhibit to the Complaint), and that Lisa Borodkin represented Defendants in the California action, and deny the remaining allegations in that paragraph.

9.      With regard to the allegations of paragraph 71 and 73 of the Complaint, Defendants admit that they obtained federal trademark registrations in THE TWIGS® for musical services, admit that they corresponded with Plaintiff and tried to settle the parties' dispute, and deny the remaining allegations in those paragraphs.

10.      With regard to the allegations in paragraph 79 of the Complaint, Defendant admit that after the California Action, Defendants did not file another complaint against Plaintiff until 2025, and deny the remaining allegations in that paragraph.

11.      With regard to the allegations in paragraph 86 of the Complaint, Defendants admit that the pictures appear to be representations of two of Defendants' album covers and deny the remaining allegations in that paragraph.

12.      With regard to the allegations in paragraph 89 of the Complaint, Defendants admit that Defendants market their band as having two members who are twin sisters and deny the remaining allegations in that paragraph.

13.      With regard to the allegations in paragraph 103 of the Complaint, Defendants admit that Linda Good submitted a declaration in the California action which stated, among other things that: "Laura and I realized the importance of having a band name that was identified

4

exclusively with our music. We did not want another musician to come along and use our name or some derivation of our name and erode the identity and goodwill that we had worked so hard to build. We decided to register the band name 'The Twigs' with the United States Trademark Office" and deny the remaining allegations in that paragraph.

14.    With regard to the allegations in paragraph 105 of the Complaint, Defendants admit that they have not filed any legal actions against the other bands listed in paragraphs 91-101 of the Complaint, and deny the remaining allegations in that paragraph.

15.    With regard to the allegations in paragraph 108 of the Complaint, Defendants admit that the image shown appears to be a copy of Plaintiff's Spotify homepage, and they lack information and belief sufficient to admit or deny the remaining allegations in that paragraph, and therefore deny those allegations.

16.    With regard to the allegations in paragraphs 10, 16, 32-45, 54-55, 69, 72, 80-81, 83, and 91-101 of the Complaint, Defendants lack information and belief sufficient to admit or deny the allegation in those paragraphs, and therefore deny those allegations.

17.    Defendants deny all of the remaining allegations set forth in Plaintiff's Complaint including without limitation all the allegations in paragraphs 1, 8-9, 11, 14, 15, 16, 26, 30-31, 76, 82, 84, 85, 87, 88, 102, 104, 106, 107, and 109-120.

## **AFFIRMATIVE DEFENSES**

18.    Defendants assert the following additional defenses to the Complaint.  In doing so, Defendants do not assume any burden of proof on any issue that is Plaintiff's burden as a matter of law.  Defendants also reserve the right to amend or supplement these defenses as additional facts become known.

**First Affirmative Defense: Failure to State a Claim**

19.     The Complaint fails to state a claim upon which relief can be granted because Plaintiff cannot plausibly allege a lack of confusion or establish laches on the facts in the record, which shows Plaintiff's actions have caused reverse confusion and recent progressive encroachment, and ongoing public confusion and misattribution.

**Second Affirmative Defense: Priority and Reverse Confusion**

20.     Defendants have priority and incontestable rights in THE TWIGS® for live and recorded musical performance and related entertainment services dating back to 1994, and any marketplace confusion arises from Plaintiff's later, large-scale intentional saturation and promotion of "Twigs" and "FKA Twigs" including widespread references to Plaintiff as "Twigs" alone to identify Plaintiff and her music and musical services to cause reverse confusion in the musical marketplace.

**Third Affirmative Defense: Progressive Encroachment and Public Interest**

21.     To the extent delay is alleged, it is excused by Plaintiff's initial retreat from and subsequent progressive encroachment of Defendants' trademark rights. Material, actionable confusion arose from Plaintiff's 2024–2026 expansion of her use and encouragement of others to use "Twigs" alone to identify Plaintiff and her musical services, The public interest strongly disfavors barring injunctive relief amid continuing confusion.

**Fourth Affirmative Defense: Estoppel and Unclean Hands in Trademark Application**

22.     Plaintiff's inconsistent presentation of her own identity as "Twigs," including at a U.S. Senate hearing on April 30, 2024, and in major media interviews, and her strategic deletion of Class 9 from her 2023 trademark application in response to a PTO Office Action letter, while pressing to register overlapping Class 41 services in which Defendants own pre-existing rights,

establish unclean hands and estop Plaintiff from asserting equitable defenses against Defendants, who are senior users harmed by reverse confusion Plaintiff has caused.

**Fifth Affirmative Defense- Unclean Hands Through Intentional Infringement**

23.     The claims asserted in the Complaint are barred by the equitable doctrine of unclean hands because, *inter alia*: a) Defendants began using "The Twigs" to identify and promote their musical services beginning in 1994, obtained federal registrations for THE TWIGS® for live and recorded musical and related entertainment  services in 1996, and have continuously used their THE TWIGS® marks to symbolize, identify, and promote their musical services since that time; (b) knowing of Defendants' prior use of "The Twigs," Plaintiff in June 2013 emailed Defendants and repeatedly acknowledged Defendants' superior trademark rights in THE TWIGS;"  (c) After Defendants expressly objected to Plaintiff's continued use of "Twigs" to identify Plaintiff's musical services, and notwithstanding Plaintiff's acknowledgment of Defendants' superior trademark rights, Plaintiff, beginning no later than 2013, lessening after 2014 but recommencing and expanding beginning in 2022, has  proceeded to intentionally infringe Defendants'  preexisting rights in THE TWIGS® by first using "Twigs" to identify herself and her musical services and, after Defendants objected to that use in writing in 2013, often but not always used "FKA Twigs" to identify Plaintiff's musical services, while on occasion still using "Twigs" to identify herself and her musical services and indirectly encouraging others to do so, thereby willfully and intentionally infringing Defendants' rights in their marks in bad faith to both benefit from the goodwill associated with Defendants' marks and to use Plaintiff's increasing celebrity, media influence, financial and other resources, promotional efforts, and presence in the online music marketplace to erode the public's association of Defendants and their musical services with their incontestable THE TWIGS® marks to

overwhelm Defendants' rights. Plaintiff's intentional infringement has thereby subverted and damaged the goodwill associated with Defendants' marks by confusing the consuming public to mistakenly believe that Defendants have authorized Plaintiff's use of "Twigs," that Defendants' preexisting marks are associated with Plaintiff, and/or that junior user Plaintiff has obtained superior rights to use "Twigs" to identify her musical services.

## Reservation of Rights

24.     Defendants reserve the right to assert additional affirmative defenses as they become known through discovery or otherwise and to amend this Answer and defenses pursuant to the Federal Rules of Civil Procedure.

## COUNTERCLAIMS

25.     Counterclaim-Plaintiffs The Laura Good, Linda Good Partnership (the "Partnership"), Linda Good, and Laura Good (the Partnership together with Linda and Laura Good collectively the "Counterclaim-Plaintiffs" or "The Twigs" or "Defendants") assert the following counterclaims against Counterclaim-Defendant Tahliah Barnett p/k/a FKA Twigs ("Counterclaim-Defendant" or "Barnett" or "Plaintiff").

## Nature of the Counterclaims

26.     These are counterclaims for trademark infringement, reverse confusion, unfair competition and false designation of origin under state and federal law.  Counterclaim-Plaintiffs The Twigs bring this action in response to the intentional, unauthorized infringement of their THE TWIGS® marks and confusingly similar variations thereof by Counterclaim-Defendant Barnett, who has apparently decided that her emotional attachment to her childhood nickname "Twigs" and her greater fame, economic success and financial resources justify her subverting and overwhelming Counterclaim-Plaintiffs' pre-existing trademark rights and public goodwill in

8

"The Twigs" that Barnett has at all relevant times known about, even though The Twigs worked to develop those trademark rights beginning 10 years before Barnett made any professional use of "Twigs" in England, and almost 20 years before Barnett released any music in the United States under the name "Twigs" or "FKA Twigs." The Twigs seek monetary compensation for the profits Barnett has received, the damage Barnett's actions have caused, and injunctive relief to prevent Barnett from engaging in such infringing actions in the future.

### Jurisdiction and Venue

27.    The Court has federal-question jurisdiction over the Lanham Act claims and supplemental jurisdiction over related state-law claims. Venue and personal jurisdiction are proper in this District.

### Counterclaim-Plaintiffs and Their Incontestable THE TWIGS® Marks

28.    Counterclaim-Plaintiffs the Twigs are musically self-taught twin sisters who decided to use their childhood nickname "Twigs" as their band name in 1993, and have performed as an indie pop duo called "The Twigs" since 1994.  They have released five highly acclaimed albums and EPs, including "Bring Me the Head of Eternity" in 1996, "The Universe Tonight" in 2001, "You Say Ah" in 2005, "Jump Right In" in 2013, and "Ladyship The Musical" in 2024, as well as the 3-song EP "Geminae," also released in 2024. They have performed hundreds of live shows throughout the United States and the world at venues such as the Troubadour in Los Angeles and CBGB's in New York, along with numerous other venues. Their music has received airplay on major radio stations throughout the United States and the world, and they have been featured artists on XM Satellite Radio and PR1-Public Radio International.

29.    To identify and promote their musical services, Counterclaim-Plaintiffs obtained the domain name  www.twigs.com in 1993, just as the Internet was becoming a commercial

9

medium, and created and posted a website promoting their music on the Internet at that domain name shortly thereafter that has remained online and been expanded for 34 years. They subsequently obtained another domain name, www.thetwigs.com, in 2010, and linked that domain name to their website that same year. Counterclaim-Plaintiffs began sales of physical records in 1996 in record stores including Tower Records, Best Buy, and Amoeba Records.  They posted or caused The Twigs' music to be posted on the music platforms; Pandora beginning in 2001, "iTunes" beginning in 2005 (renamed Apple Music in 2015), "Spotify" and "Amazon Music" beginning in 2013, and "YouTube" beginning in 2014. Counter-claim Plaintiffs have sold physical CDs and digital music on Amazon.com since 2007.  The Twigs' music has also been featured in the motion pictures "Sketches" (1996) and "Cruel Intentions III" (2004), and the television programs "Emily's Reasons Why Not" (2006), "Men in Trees" (2007), and elsewhere.

30.     As a result of their creativity and hard work since 1994, Counterclaim-Plaintiffs as "The Twigs" have developed a significant reputation and public goodwill as composers, musical performers, and recording artists. In recognition of that public goodwill, the U.S. Patent and Trademark Office granted the Partnership  two federal trademark registrations for THE TWIGS® in 1996 in two classes, namely Reg. No. 2,003,136 in Class 41 and Reg. No. 4,683,985 in Class 9. Both registrations became incontestable in 2001 pursuant to 15 U.S.C. § 1065. The Class 41 registration covers entertainment services in the nature of a musical band, while the Class 9 registration covers audio and video recordings featuring music and artistic performances and related services. Both registrations remain active and in good standing. True and correct copies of those trademark registrations are attached as Exhibit 1.

**Counterclaim-Defendant Tahliah Barnett and Her Use of "Twigs" and "FKA Twigs."**

31.     Counterclaim-Defendant Tahliah Barnett, who Counterclaim-Plaintiffs are informed and believe, is a British subject born in 1988, and who Counterclaim-Plaintiffs are informed and believe started working as a model and dancer in London using the name "Twigs" in about 2004, about ten years after The Twigs first adopted their childhood nickname "Twigs" as their band name and began performing under it in 1994. Barnet has stated in interviews that she acquired that nickname from the way her joints "popped" when she danced.

32.     In September 2013, 19 years after The Twigs obtained federal trademark registrations in THE TWIGS® for musical services as described above, and eight years after Counterclaim-Plaintiffs posted music on iTunes under their incontestable THE TWIGS® trademarks in 2006 as described above, Barnett released music on iTunes, also under the name "Twigs." After doing so, Barnett signed to record label Young Turks Limited in 2013, and eventually became associated with Atlantic Records through distribution and marketing partnerships in the U.S. in 2022.

33.     No later than June 2013, Barnett learned of the Twigs and their trademark rights in THE TWIGS®. She sent an email to them on June 5, 2013, in which she stated that "I have been listening to your music online it's really cool!" and acknowledged that she "recently …noticed that you guys existed and were called The Twigs. …I appreciate that you've been releasing music and performing as The Twigs a lot longer than I have been Twigs so I thought I should reach out and say hi and check that you are ok with it." See Exhibit 2.

34.     The Twigs responded five days later with an email advising that they "own the U.S. Trademark for the name 'The Twigs' for use in music and entertainment…So we are sorry, but unfortunately the law dictates that we are not ok with you using the name 'Twigs' or any

11

derivation thereof.  You are obviously very creative and we are sure you will come up with something that is yours alone and that will allow you to freely promote your music all over the world. Wishing you the best of luck in your endeavors." See attached Exhibits 2 and 3.

35.    Barnett responded in emails dated June 14 and June 18, 2013 which again acknowledged The Twigs' trademark rights, stating that "I appreciate that you have a trademark and that you have been performing and making music under The Twigs for many years" and mentioned paying The Twigs for the parties to agree to a co-existence agreement. See attached Exhibits 2 and 4. In her June 18 email, Barnett wrote:  "I fully respect your feelings on this but before I move on I just have to check if there's there any conversation to be had about us both existing and whether or not a payment of some kind could help."  Counterclaim-Plaintiffs responded the next day by again encouraging Barnett "to embrace a new name-one that represents where you're going, instead of where you've been." The Twigs again cautioned Barnett that they acted to protect their rights. See Exhibit 5.

36.    Again acknowledging The Twigs' superior trademark rights, on July 2, 2013, Barnett stated in an email: "I assure you I have no intention of trying to use the name Twigs if we can't come to an arrangement, I understand and appreciate the legal ramifications I was just hoping there might be an agreement that would enable us both to exist under our names." Exhibit 5.  Barnett also offered them $15,000 for a co-existence agreement. The Twigs did not accept that offer, and again encouraged Barnett to use a different mark to promote her music.

37.    Notwithstanding Barnett's repeated acknowledgment of The Twigs' superior rights in their THE TWIGS® marks for musical services, and with full knowledge of those trademark rights, Barnett continued using "Twigs" to promote her own musical services after June 2013. For example, in September 2013, two months after email exchange with The Twigs

12

and with full knowledge of The Twigs' rights, she released a collection of songs called "EP2" that on its cover prominently displayed a picture of Barnett wearing a nameplate necklace that stated "Twigs," as shown below:



38.     On information and belief, notwithstanding that EP cover, Plaintiff's record label represented in September 2013 that it would "continue to do all we can to prevent any confusion arising amongst the public" between Barnett and The Twigs, and that it would review artwork to "make any necessary changes" to avoid confusion.

39.     In late 2013, Barnett modestly changed her professional name from "Twigs" to "FKA Twigs" for professional identification. Although "FKA" is a well-known acronym for "Formerly Known As," and thus the use of that acronym before "Twigs" would naturally communicate to consumers that Barnett was no longer going to identify herself as "Twigs" for her musical services, in subsequent interviews Barnett denied that she intended that meaning, instead claiming that her use of "FKA" "doesn't stand for anything, it's just capital letters…FKA just worked."  Barnett has been inconsistent about this explanation; in a recent review of Barnett's April 1, 2026 live show in Denver (Westword, April 1, 2026), for example, journalist

Eman El Saied stated that "FKA stands for 'Formerly Known As'" under a photo of Barnett—further demonstrating consumer confusion about Barnett's identity. Barnett began touring the U.S. under this revised name beginning in April 2014, and released her first album "LP1" in the U.S. as "FKA Twigs" in August 2014.

40.     Barnett's actions and inactions, especially advertising for Barnett's first U.S. live musical concert as "FKA Twigs" where the Twigs resided in Los Angeles, California in April 2014, caused Counterclaim-Plaintiffs to file suit for trademark infringement and seek a temporary restraining order to stop Barnett's use of "FKA Twigs" to promote Barnett's music concert in that certain action entitled *Linda Elaine Good et al v. Tahliah Barnett et al.*, Case 2:14-cv-02668-SVW-JCG (C.D. Ca. April 8, 2014). (*See* Complaint Exhibit 1 (ECF 1-1.). In that action, Barnett attempted to retract and dispute the admissions she made in her email exchanges with The Twigs attached as Exhibits 2 through 5 herein, claiming instead that "Plaintiffs have abused by good faith and tried to twist my statements to them in their motion papers." See Exhibit 6 herein. Barnett also stated that she and her label had changed her professional name from "Twigs" to "FKA Twigs" in response to The Twigs' assertion of trademark rights, arguing that lessened the risk of public confusion. *Id*.

41.     The trial court denied The Twigs' application for a temporary restraining order on April 10, 2014, stated that "even assuming that plaintiffs will prevail on the merits of their underlying trademark dispute, they have not established a *likelihood* of irreparable injury if tonight's concert proceeds with defendant Barnett continuing to use the mark 'fka Twigs'(,)" because The Twigs did not establish that monetary damages would be an inadequate remedy, and because the Twigs waited eight days after learning of Barnett's Los Angeles concert to file their complaint and emergency application. (Complaint Ex. 2:3 (ECF 1-2).

14

42.     Having lost the immediate relief they requested, and lacking the financial resources of Barnett and her record label and financial backers, The Twigs voluntarily dismissed without prejudice their trademark infringement claims about four days later, thereby reserving the right to pursue legal action against Barnett for future infringement of Defendants' trademark rights. Counterclaim-Plaintiffs have never made any statement to Barnett or her representatives at any time that they would not exercise their rights against Barnett if necessary to protect them. Instead, from that dismissal without prejudice in 2014 through 2024, the Counterclaim-Plaintiffs monitored Barnett's conduct in the U.S. music marketplace, and did not pursue further litigation. They reasonably believed that several factors made continued litigation unnecessary during this period.

43.     For example, on information and belief, Barnett remained primarily based in the United Kingdom, with most of her entertainment services emanating from that country. Plaintiff's pre-2014 litigation representation that she would not use "Twigs" to identify herself or her musical services without Counterclaim-Plaintiffs' agreement provided The Twigs with some comfort, and they did not discover any use of "Twigs" by Burnett in violation of that representation for at least eight years after the 2014 dismissal.  Counterclaim-Plaintiffs observed that Barnett also took a significant hiatus from releasing any new music at all for more than four years, between her 2015 EP M3LL155X and the November 2019 release of her studio album "Magdelene," further reducing the risk that Barnett's actions would infringe The Twigs' rights. Barnett also did not apply for a federal trademark registration for "Twigs" or "FKA Twigs" in any class during that nine-year period, further allaying  their concerns

44.     Barnett gained significant celebrity as "FKA Twigs" for other reasons during this period. She gained fame for dating actor Robert Pattinson from 2014 to 2017, and dating actor

Shia LaBeouf in 2018 and 2019, as well as for suing LaBeouf beginning in December 2020 and continuing through mid-2025. She also remained active in acting and performance art during that period, creating and starring in the autobiographical dance film *Soundtrack 7* and hosting an immersive art project for the Veuve Clicquot Wido Series call ROOMS in 2016. She thereby increased public association of "FKA Twigs" with her and her public activities and artistic endeavors, but as those efforts did not involve musical services covered by The Twigs' trademark registrations, such activities were not of as great a trademark concern to Counterclaim-Plaintiffs. It appeared to Counterclaim-Plaintiffs that Barnett had shifted her professional focus to acting, dancing, and modeling, reducing her U.S. music activity for much of this period. For example, Barnett danced at the Grammys' tribute to Prince in 2020, and appeared as a dancer with the Martha Graham Dance Company in 2024, without singing at either event.  To the best of Counterclaim-Plaintiffs' then knowledge, Barnett appeared to be consistently using the "FKA" prefix in her formal branding, providing some degree of differentiation for her services in those non-musical media and entertainment spaces. As best as Counterclaim-Plaintiffs could then determine, Barnett was attempting to avoid infringement of The Twigs' rights through those actions.  Counterclaim-Plaintiffs' decision to monitor rather than litigate during those years appeared reasonable in those circumstances.

45. Circumstances began to change after Barnett's November 2019 release of her musical album "Magdelene."  Counterclaim-Plaintiffs are informed and believe it was not a massive commercial success, but it was critically praised, and began to increase the public's association of "FKA Twigs" with recorded musical services. Counterclaim-Plaintiffs are informed and believe that Barnett's average monthly listeners on Spotify increased to the range of 1.5 million to 2 million people after "Magdelene's" release.

16

46.     Barnett and her record label Young (formerly Young Turks Limited) partnered with Atlantic Records to promote Barnett's music in 2022, and Atlantic Records thereafter focused on expanding her music audience in 2022 and 2023 by having her perform on a "Caprisongs" mixtape with other, better-known artists such as The Weeknd to enhance her crossover appeal. Although Counterclaim-Plaintiffs did not know it at the time, Barnett used the name "Twigs" and was referred to as "Twigs" in a number of promotional interviews concerning the "Caprisongs" mixtape in 2022, demonstrating an intent to increasingly associate herself and her music with her personal nickname "Twigs" with full knowledge of The Twigs' trademark rights, and to thereby weaken, if not destroy, Counterclaim-Plaintiffs' trademark rights in THE TWIGS® for such musical services.

47.     Circumstances further materially changed in late 2023 and 2024, when Barnett filed a U.S. trademark application for FKA TWIGS on December 21, 2023 in Classes 9, 25, 35, and 41. Counterclaim-Plaintiffs owned and own incontestable trademark rights in THE TWIGS® in Class 9 (audio and video recordings) and Class 41 (entertainment services). When the USPTO issued an Office Action letter citing The Twigs' Class 9 registration as a bar to registration, Barnett strategically deleted Class 9 from her application rather than contest the refusal—thereby effectively conceding that "FKA Twigs" is confusingly similar to THE TWIGS® in goods and services covered by Class 9. Barnett nevertheless continued to press for registration of the overlapping Class 41 services in which The Twigs also hold pre-existing incontestable rights, demonstrating that Barnett was attempting to claim trademark rights in FKA TWIGS in one of the same classes of musical services in which she had known for 10 years that Counterclaim-Plaintiffs possessed incontestable rights in THE TWIGS®.

48.    Counterclaim-Plaintiffs learned of this application in early 2024, and sent a cease-and-desist letter to Barnett's counsel on May 17, 2024, expressly stating  and placing Barnett on notice that they were asserting their rights, and that Counterclaim-Plaintiffs objected to her efforts to claim trademark rights for "FKA Twigs" in the same class of  entertainment services in which they owned incontestable rights in THE TWIGS®.  *See* Complaint Exhibit 5 (ECF 1-5). The parties thereafter attempted to negotiate a resolution of their dispute, but they did not succeed in doing so, and Counterclaim-Plaintiffs eventually had to file a TTAB Notice of Opposition on December 19, 2025, Opp. No. 91303922, to prevent Barnett's registration of "FKA Twigs" in Class 41.

49.    Counterclaim-Plaintiffs also learned in 2024 that Barnett was identifying herself in public as "Twigs" for her musical services without the "FKA" prefix as described above. Barnett not only did so in media interviews, she also did so in an appearance before a U.S. Senate Subcommittee on April 30, 2024. In that hearing, she appeared behind a nameplate identifying herself simply as "Twigs" without correction, was addressed by Senator Coons in the hearing as "Twigs" without correction, and testified, *inter alia*, that "I've been creating an AI version of myself… I will be engaging my AI Twigs later this year to extend my reach…" Barnett explained that she caused the creation of her own deepfake clone named "AI Twigs" to handle online media interactions with music fans and journalists, again without the "FKA" prefix she had agreed to use to identify herself in 2013.  This appearance and her testimony understandably gained significant media attention, further associating Barnett with "Twigs" and "FKA Twigs" as the source of Barnett's music and music services.  Counterclaim-Plaintiffs subsequently learned that Barnett began using "Twigs" alone (without the FKA prefix) to

promote her music as early as 2022 in interviews promoting her "Caprisongs" mixtape as described above.

50.    In apparent response to Barnett's actions, widely publicized media coverage in publications such as *Rolling Stone, British Vogue, Pitchfork*, and other entertainment media outlets increasingly referred to Barnett as "Twigs" without the "FKA" prefix when discussing her music and musical services, without correction by Barnett. A significant portion of informal online discussion by the public also began referring to Barnett and her musical services as coming from "Twigs" without the "FKA" prefix, again without comment or correction from Barnett, In fact, Barnett implicitly encouraged such use, as she repeatedly stated in interviews that the "FKA" prefix in her professional name did not mean "Formerly Known As," despite that acronym having that widely understood meaning, implying that she still thought of herself as "Twigs," and also stating in interviews that "I am not FKA Twigs," implying in another way that she should be identified simply as "Twigs." The upshot of all of the above actions was that Barnett, with full knowledges of Counterclaim-Plaintiffs' incontestable, federally-registered trademark rights in THE TWIGS® for live and recorded musical entertainment services, and contrary to her previous representations and apparent efforts to avoid confusion, intentionally used her celebrity and her and her record label's promotional efforts to market "FKA Twigs" and "Twigs" alone as the source of Barnett's music and musical services, so that she could claim trademark rights in " "FKA Twigs" and "Twigs" alone for the same classes of service in which Counterclaim-Plaintiffs owned preexisting rights in THE TWIGS®. Barnett's intentionally used her celebrity" and resulting power with the media to act in ways designed to increase the public's association of Barnett and her musical services with "Twigs," while eroding and overwhelming

Counterclaim-Plaintiffs' goodwill in THE TWIGS® in those same musical channels of commerce.

51.    Barnett's complaint herein effectively affirms this, arguing that Barnett has succeeded in her efforts to wipe out Counterclaim-Plaintiffs' rights so effectively that it is "inconceivable" that Counterclaim-Plaintiffs still possess such rights in their incontestable THE TWIGS® marks, or that Barnett could possibly be infringing them, because Barnett's celebrity and promotional efforts have caused the public to believe only she is the source of "Twigs'" musical services, and that therefore she has superior, though junior, rights to use "Twigs" for such services. She asks this Court to reward her for successfully destroying Counterclaim-Plaintiffs' rights in THE TWIGS® marks by declaring that she is not infringing them.

52.    The public reaction to this litigation confirms the depth of reverse confusion that Barnett's actions have caused. When the present dispute became public knowledge through news coverage in March 2026- including in *Billboard, Bloomberg, Rolling Stone, NME, Pitchfork,* and *TMZ*, uninstructed members of the consuming public overwhelmingly, though mistakenly, assumed that junior user Barnett was the original and rightful owner of "Twigs" for musical services, and that Counterclaim-Plaintiffs were unknown or bad-faith actors seeking to exploit Barnett's fame. For example, March 2026 TMZ Facebook comment threads debating the present dispute consistently minimized and demeaned The Twigs' senior rights, and members of the public sent Instagram direct messages to Counterclaim-Plaintiffs at "@the_twigs" which repeatedly demanded that Counterclaim-Plaintiffs "leave FKA twigs alone," accusing the Twigs of suing a "real artist" even though Barnett, and not the Twigs, initiated the present litigation. These unsolicited, organic reactions were not caused by the lawsuit itself; instead, they were caused by Barnett's improper publicity, promotional efforts, market saturation, celebrity, search

and streaming prominence, and media coverage identifying Barnett and her music as coming from "Twigs." The litigation merely made visible a pre-existing state of consumer perception Barnett caused that demonstrates reverse confusion.

53.    Counterclaim-Defendant's expanding actions and inactions in using "Twigs" and "FKA Twigs" to promote her competing musical services with full knowledge of Counterclaim-Plaintiffs' THE TWIGS® marks beginning in 2022 and expanding thereafter, as well use Barnett's use of her greater fame, record label backing, resources, celebrity, and market presence to overwhelm the Twigs' goodwill and misappropriate it, infringes Counterclaim-Plaintiffs' trademark rights.

### Count I — Trademark Infringement and False Designation of Origin
### (15 U.S.C. § 1125(a))

54.    Counterclaim-Plaintiffs repeat and reallege the foregoing paragraphs as if fully set forth herein. Counterclaim-Defendant has used and continues to use FKA TWIGS in interstate commerce in connection with entertainment services, including live musical performances, without the Counterclaim-Plaintiffs' consent. Counterclaim Defendant's use is likely to cause reverse confusion with the Counterclaim-Plaintiffs' senior THE TWIGS mark. The junior user's marketplace strength and saturation, the similarity of "Twigs" as presented in press and platforms, overlap in Class 41 live musical performances, and actual reverse confusion evidenced by social media establish a likelihood of confusion and warrant injunctive and monetary relief.

55.    The Counterclaim-Plaintiffs have suffered and will continue to suffer irreparable harm for which there is no adequate remedy at law. Upon a finding of likelihood of success on the merits, the Counterclaim-Plaintiffs  are entitled to a presumption of irreparable harm under 15 U.S.C. § 1116(a).

21

## Count II — Trademark Infringement
### (Lanham Act § 32)

56.    The Counterclaim-Plaintiffs repeat and reallege the foregoing paragraphs as if fully set forth herein. The Partnership owns Reg. No. 2,003,136 (Class 41) and Reg. No. 4,683,985 (Class 9) for THE TWIGS. Without the consent of the Partnership as registrant, Counterclaim-Defendant has used in commerce a reproduction, counterfeit, copy, or colorable imitation of the registered marks in connection with the sale, offering for sale, distribution, and advertising of services and goods for which use of the marks is likely to cause confusion. Counterclaim Defendant's use is likely to cause reverse confusion with these registered marks in overlapping services and related goods, entitling the Counterclaim-Plaintiffs to the remedies provided by 15 U.S.C. § 1114.

57.    The Counterclaim-Plaintiffs  have suffered and will continue to suffer irreparable harm for which there is no adequate remedy at law, and are entitled to a presumption of irreparable harm under 15 U.S.C. § 1116(a).

## Count III — Unfair Competition
### (New York Common Law)

58.    The Counterclaim-Plaintiffs  repeat and reallege the foregoing paragraphs as if fully set forth herein. The Counterclaim-Defendant has engaged in unfair competition under New York common law by misappropriating the Counterclaim-Plaintiffs' goodwill embodied in the THE TWIGS® marks and by causing reverse confusion through marketplace saturation with a confusingly similar mark.  The Counterclaim-Defendant's conduct was undertaken with knowledge of the Counterclaim-Plaintiffs' senior rights, as demonstrated by her June 2013 acknowledgment of the Counterclaim-Plaintiffs' priority and her subsequent broken promise not to use "Twigs" without the Counterclaim-Plaintiffs' agreement, and constitutes bad faith

22

entitling the Counterclaim-Plaintiffs to damages and, where appropriate, punitive damages.  The actual confusion and marketplace misattribution alleged herein support an award of damages and injunctive relief under New York law.

### Count IV — Determination of Registrability; Direction to Refuse Registration (15 U.S.C. § 1119)

59.     The Counterclaim-Plaintiffs repeat and reallege the foregoing paragraphs as if fully set forth herein. The Counterclaim-Defendant's U.S. Trademark Application Serial No. 98/325,539 for FKA TWIGS, filed December 21, 2023, published June 24, 2025, in Classes 25, 35, and 41, should be refused because THE TWIGS has priority and is confusingly similar for overlapping Class 41 services under 15 U.S.C. § 1052(d). This Court has authority to determine registrability notwithstanding the suspension of TTAB Opposition No. 91303922, and should direct the Director of the USPTO to refuse registration pursuant to 15 U.S.C. § 1119.

### PRAYER FOR RELIEF

WHEREFORE, the Counterclaim-Plaintiffs respectfully request that the Court enter judgment as follows:

(a)     Declaring that Plaintiff's use of "FKA Twigs" and "Twigs" to identify her musical services is likely to cause reverse confusion with THE TWIGS;

(b) Permanently enjoining Plaintiff from using "FKA Twigs," "Twigs," or any confusingly similar designation for live or recorded musical performances and related overlapping goods or services, and ordering corrective advertising and narrowly tailored remedial measures to restore source clarity;

(c) Awarding damages and, subject to equitable principles, Plaintiff's profits, together with costs and, in exceptional circumstances, reasonable attorneys' fees under 15 U.S.C. § 1117;

(d) Awarding actual and punitive damages on the Unfair Competition Claim

brought under New York Common Law

(e) Directing the USPTO under 15 U.S.C. § 1119 to refuse registration of U.S.

Application Serial No. 98/325,539 for FKA TWIGS in Classes 25, 35, and 41;

(f) Awarding pre- and post-judgment interest as permitted by law; and

(g) Granting such other and further relief as the Court deems just and proper

### JURY DEMAND

Counterclaim-Plaintiffs demand a trial by jury on all issues so triable.

Dated: May 11, 2026
    New York, New York

RIMON, P.C.

By:    */s/David I. Greenbaum*

David I. Greenbaum
Michael S. Lazaroff
400 Madison Avenue, Suite 11D
New York, New York 10017
Telephone:  646-779-0787
Telephone:  646-738-4151
david.greenbaum@rimonlaw.com
michael.lazaroff@rimonlaw.com

Mark S. Lee (Cal. SBN 94103)(PHV Application to be filed)
mark.lee@rimonlaw.com
2029 Century Park East, Suite 400N
Los Angeles, California 90067
Telephone: 213-375-3811
(*pro hac vice* application pending)

*Attorneys for Defendants and Counterclaim-Plaintiffs*

24