UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TAHLIAH BARNETT P/K/A FKA TWIGS,<br><br>Plaintiff,<br><br>v.<br><br>THE LAURA GOOD, LINDA GOOD PARTNERSHIP; LINDA GOOD; and LAURA GOOD,<br><br>Defendants. | 26-cv-2331 (JSR)<br><br>Opinion |

JED S. RAKOFF, U.S.D.J.

On July 28, 2026, this Court issued a "bottom-line" Order dismissing Defendants' counterclaims and granting Plaintiff's application for declaratory relief to the extent that it reflects that dismissal. See ECF No. 38. This Opinion sets forth the reasons for that Order.

## I. Background

Plaintiff Tahliah Barnett is an internationally recognized artist whose work includes music, modeling, and acting.[1] See ECF

[1] For purposes of resolving the instant motions, the Court considers only "documents that qualify as part of the [the Goods'] pleading, including (1) the complaint or answer, (2) documents attached to the pleading, (3) documents incorporated by reference in or integral to the pleading, and (4) matters of which the court may take judicial notice." Lively v. WAFRA Inv. Advisory Grp., Inc., 6 F.4th 293, 306 (2d Cir. 2021). In doing so, the Court does not "weigh[] the plausibility of competing allegations or [] consider[] evidence extrinsic to the [the Goods'] pleading." Id.

No. 1 ("Compl.") ¶ 2; ECF No. 27 (Defendants' Answer, Affirmative Defenses, and Counterclaims, hereinafter "AADC") ¶ 2. Since at least 2013, Barnett has been using the stage name "FKA twigs" in connection with her music and other artistic work. Compl. ¶ 4; AADC ¶ 2. While there is some dispute between the parties as to Barnett's level of musical output since 2013, it is undisputed that she released new music in at least 2014, 2015, 2019, and 2022. AADC ¶¶ 39, 43, 46; ECF No. 31 ¶¶ 40-44.

Defendants Laura and Linda Good ("the Goods") are twin sisters who comprise a band called "The Twigs." AADC ¶ 5. They have been performing under this name since 1994, and since 1996 they have held trademark registrations in "The Twigs" "in live and recorded musical performances and other entertainment services." Id. ¶ 5. The Twigs have steadily released music over the last thirty years. Id. ¶ 28.

Until 2013, Barnett performed under her childhood nickname, "Twigs." That year, she emailed the Goods explaining that she had become aware of their band and wanted to avoid confusion between their stage names. See ECF No. 27-5. Barnett asked for the Goods' permission to continue using "Twigs" as a stage name and ultimately offered them $15,000 to permit her continued use. The Goods refused. See ECF No.27-3, 27-4, 27-5. After this correspondence, Barnett changed her stage name to "FKA Twigs" "as a gesture to

fellow musicians, and to try to avoid a threatened claim by" the Goods. ECF No. 27-6 ¶ 7.

Despite the change, a year later, the Goods filed a lawsuit in the Central District of California against Barnett alleging that her use of Twigs and FKA Twigs infringed their copyright. See ECF No. 1-1. They alleged that Barnett's performances and release of music under the FKA Twigs moniker was confusingly similar to their own band name, and that it was crowding out attention and tarnishing their goodwill. See id. ¶¶ 34-37, 50-53.

In their 2014 lawsuit, the Goods brought claims under the Lanham Act and sought a temporary restraining order "to enjoin [Barnett] from using [her] Twigs mark at a sold-out concert that" was scheduled to begin imminently. Order Denying Plaintiffs' Ex Parte Application for Issuance of a Temporary Restraining Order, Good v. Barnett, No. cv 14-2668 SVW, at *2 (C.D. Cal. Apr. 10, 2014); see also ECF No. 1-2. The District Court denied the Goods' TRO because it concluded that they had not "established a likelihood of irreparable injury" if the concert proceeded and had failed to expeditiously seek relief. See id. at *3. A few days later, the Goods voluntarily dismissed the case without prejudice.

Nearly a decade passed during which time there was apparently no contact between the parties. Then, in late 2023, Barnett filed a trademark application for "FKA Twigs," which proceeded through

examination with the U.S. Patent and Trademark Office ("USPTO") and was published for opposition in June of 2025. See AADC ¶ 47. Shortly after Barnett submitted the trademark application, the Goods sent her a cease-and-desist letter demanding that she stop using either "FKA twigs" or "Twigs" "in connection with her performance and distribution of musical works." ECF No. 1-5, at 3. The Goods sent a second cease-and-desist letter in October 2025. See ECF No. 1-6. A few months later, the Goods initiated formal proceedings opposing Barnett's trademark application with the USPTO. See Compl. ¶ 74; AADC ¶ 4.

In response to the Goods' letters, Barnett initiated the instant action bringing a single claim for relief under the Lanham Act. Compl. ¶ 33. She seeks a declaration that (1) her "use of the FKA TWIGS mark does not infringe, and at all times, has not infringed, any existing and valid trademark rights of" the Goods; (2) her "use of the FKA TWIGS mark is not likely to cause, and has not caused, confusion, mistake, or deception as to the affiliation, connection, or association of [the Goods] with Barnett's goods and services, or as to the origin, sponsorship, or approval of Barnett's goods and services by [the Goods] under the Lanham Act"; (3) the Goods' "purported assertions of trademark infringement and contentions of likelihood of confusion are barred by the doctrines of laches, acquiescence, equitable estoppel, trademark misuse/unclean hands, and/or waiver"; and (4) her "pending

application for registration of the mark FKA TWIGS may proceed to registration." Id. at 35-36. Barnett also seeks an injunction preventing the Goods from interfering with her use of the FKA Twigs Mark and from opposing her USPTO application. See id. at 36.

Defendants filed an answer and asserted four counterclaims. They bring two counterclaims under the Lanham Act — one for false designation of origin, 15 U.S.C. §§ 1125(a), and the other for trademark infringement under 15 U.S.C. § 1114. AADC ¶¶ 54-56. They also bring a New York State unfair competition claim, id. ¶ 58, and a claim for determination of registrability pursuant to 15 U.S.C. § 1119, id. ¶ 59.

Barnett moved for judgment on the pleadings as to her claim for relief and also moved to dismiss the Goods' counterclaims. See ECF No. 29. After the parties briefed these motions, the Court held oral argument and issued a "bottom-line" order dismissing the Goods' counterclaims and granting "a portion of [Barnett's] application for declaratory relief . . . to the extent that it reflects that dismissal, but not otherwise." ECF No. 29. The analysis that follows explains that Order.

## II. Legal Standard

Barnett's motion seeks dismissal of the Goods' counterclaims under Fed. R. Civ. P. 12(b)(6) and seeks judgment on the pleadings on her claim for relief under Rule 12(c). As a general matter, "[t]he legal standard for granting a motion to

dismiss is identical to the standard for granting a motion for judgment on the pleadings."[2] XL Specialty Ins. Co. v. Fracht FWO Inc., 781 F. Supp. 3d 177, 180 (S.D.N.Y. 2025); see also Hayden v. Paterson, 594 F.3d 150, 160 (2d Cir. 2010). To survive Barnett's motion to dismiss their counterclaims, the Goods' pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." XL Specialty, 781 F. Supp. 3d at 180. In conducting this analysis, the Court "draw[s] all reasonable inferences in [the Goods'] favor." Id.

As for Barnett's motion for judgment on the pleadings, where "a plaintiff is the movant, courts must accept all factual allegations in the answer and draw all reasonable inferences in favor of the defendants, who are the non-movants in that scenario." Lively v. WAFRA Inv. Advisory Grp., Inc., 6 F.4th 293, 305 (2d Cir. 2021). "And in such a posture, courts should consider the answer, along with any attached written instruments or other matters of which courts can take judicial notice." Id.

---

[2] Except where otherwise indicated, all quotations in this Opinion omit citations, quotation marks, footnotes, brackets, ellipses, and other non-substantive alterations in source material.

## III. Analysis

In the main, Barnett argues that the Goods' copyright and unfair competition claims are barred by laches. She contends that because the Goods were aware of Barnett's use of "FKA twigs" as early as 2013 — and indeed brought and dismissed an infringement suit based upon precisely that use — their claims are now untimely. The Court agrees. Reading the pleadings in the light most favorable to the Goods as the non-moving party, the Court nevertheless concludes that their Lanham Act claims, and their New York state unfair competition claims, are barred by laches. The Goods' remaining claim must be dismissed because it seeks relief that is not within the Court's authority to grant.

### A. Doctrine of Laches

Laches is a viable defense to both Lanham Act claims and claims for unfair competition under New York common law. See Saratoga Vichy Spring Co. v. Lehman, 625 F.2d 1037, 1040-41 (2d Cir. 1980). However, "[i]t is well established that laches is not a defense against injunctive relief when the defendant intended the infringement." Hermes Int'l v. Lederer de Paris Fifth Ave., Inc., 219 F.3d 104, 107 (2d Cir. 2000). Put differently, "intentional infringement is a dispositive, threshold inquiry that bars further consideration of the laches defense, not a mere factor to be weighed in balancing the equities." Id. The Goods urge that Barnett engaged in

intentional infringement and is therefore barred — as a threshold matter — from asserting a laches defense. The Court begins with, and rejects, this threshold argument.

Courts in this Circuit have repeatedly clarified that "more than mere knowledge is required" to conclude that a junior user has engaged in intentional infringement.[3] RBC Nice Bearings, Inc. v. Peer Bearing Co., 410 F. App'x 362, 366 (2d Cir. 2010); see also Star Indus., Inc. v. Bacardi & Co., 412 F.3d 373, 388 (2d Cir. 2005); Victorinox AG v. B & F Sys., Inc., 114 F. Supp. 3d 132, 136 (S.D.N.Y. 2015), aff'd sub nom. Victorinox AG v. B&F Sys., Inc., 709 F. App'x 44 (2d Cir. 2017). Rather, "to forestall the laches defense, there must be a finding of the infringer's intent to promote confusion or exploit [the senior user's] good will or reputation." RBC Nice Bearings, 410 F. App'x at 366. "In other words, a laches defense is not available to a defendant who intentionally traded off the [senior user's] name and protected products." Victorinox AG, 114 F. Supp. 3d at 136.

Here, the pleadings do not remotely support the inference that Barnett intended to promote confusion between herself and the Goods. The Goods point out that Barnett was aware of their

---

[3] Indeed, it would make little sense if a senior user could forestall a laches defense in perpetuity merely by making the junior user aware of the existence of their mark. Such a rule would permit the senior user to file a suit against the junior user, withdraw the suit without prejudice, and then sit on their rights indefinitely.

mark as early as 2013, and that, at the time, she expressed a desire to avoid using a stage name that would be confusingly similar to theirs. See ECF Nos. 27-3, 27-4, 27-5. But this does not suggest that Barnett sought to trade on the Goods' name, "or to exploit the good will and reputation of [the Goods] by adopting the mark with the intent to sow confusion between" herself and the Goods. See Star Indus., 412 F.3d at 388. Rather, even viewed in the light most favorable to the Goods, the allegations here amount to Barnett's "mere knowledge" of the existence of the Goods' mark. Accordingly, the Court concludes that Barnett did not engage in intentional infringement and is not barred from raising a laches defense to the Goods' infringement claims.

Having concluded that laches is not barred as a threshold matter, the Court now turns to the application of laches in this case. To begin, "prior to the running of the most closely analogous state statute of limitations there is no presumption of laches and the burden remains on the defendant to prove the defense." Conopco, Inc. v. Campbell Soup Co., 95 F.3d 187, 191 (2d Cir. 1996). However, "once the analogous statute has run, a presumption of laches will apply and plaintiff must show why the laches defense ought not be applied in the case." Id.

In New York, the applicable statute of limitations is the state's six-year limitations period for fraud. See Fed. Treasury

Enter. Sojuzplodoimport v. Spirits Int'l B.V., 809 F.3d 737, 746 (2d Cir. 2016). "The laches clock begins to run when the trademark owner knew or should have known, not simply that the infringer was using the potentially offending mark, but that it had a provable infringement claim against the infringer." Excelled Sheepskin & Leather Coat Corp. v. Oregon Brewing Co., 897 F.3d 413, 419 (2d Cir. 2018). Accordingly, the operative question is whether the Goods knew or should have known that they had a provable claim against Barnett more than six years before they brought the instant suit.

The Court concludes that they did. The Goods were aware of Barnett's allegedly infringing activity as early as 2013 when the parties exchanged emails, and certainly no later than 2014 when the Goods sued Barnett alleging trademark infringement. After the Goods dismissed their suit, Barnett continued releasing music under the name "FKA twigs." See AADC ¶¶ 39, 43, 46; ECF No. 31 ¶¶ 40-44. Yet the Goods did not take any action until 2024 and did not bring the instant claims until 2026. In other words, the Goods let their claims lie fallow for at least a decade. That inaction creates a presumption of laches.

The Goods' primary response is that their "reverse confusion" claim is timely because it did not become provable until 2022. The Court finds this argument unpersuasive.

As a general matter, "reverse confusion" refers to a type of infringement claim "where the consumer will believe that the junior user is the source of the senior user's goods." Kelly-Brown v. Winfrey, 717 F.3d 295, 304-05 (2d Cir. 2013). On the Goods' account, "Barnett gained fame for reasons largely unrelated to music from 2014 to 2019, then used that fame to engage in promotional activities and attract media attention to overwhelm the Twigs' senior rights beginning in 2019 and becoming provable in 2022, 2023, and 2024, when Barnett filed a trademark application covering Class 9 and 41 in the PTO." ECF No. 33, at 19. The Second Circuit has explained that "[a]lthough a plaintiff cannot simply sleep on his rights, he has no obligation to sue until the likelihood of confusion looms large and his right to protection has clearly ripened." ProFitness Physical Therapy Ctr. v. Pro-Fit Orthopedic & Sports Physical Therapy P.C., 314 F.3d 62, 68 (2d Cir. 2002). Thus, the Goods argue, it was not until the last several years that their reverse confusion claim became provable.

This argument fails. The laches clock "begin[s] to run once the [senior user] is aware of the facts underlying its cause of action." See McKenzie v. Artists Rts. Soc'y, Inc., 757 F. Supp. 3d 427, 438 (S.D.N.Y. 2024). Here, the Goods admit they were aware that Barnett was using "FKA twigs" in connection with her music since at least 2014. While Barnett may have progressively

grown more famous in the intervening years, the pleadings do not suggest that she "redirected [her] business so that it more squarely competed with" the Goods' during this time period. See ProFitness, 314 F.3d at 70. The mere fact that, over time, Barnett garnered attention and goodwill while performing as "FKA twigs" is no reason to reset the laches clock. Indeed, the very purpose of laches is to ensure that a senior user cannot "destroy a huge business built up with its connivance and consent." Dwinell-Wright Co. v. White House Milk Co., 132 F.2d 822, 825-26 (2d Cir. 1943) (Hand, J.). Thus, because there was no change in the operative facts underlying the Goods' infringement claims, the presumption of laches applies.

If anything, the foregoing discussion only confirms that the Goods' delay in asserting their rights substantially prejudiced Barnett. Both parties agree that Barnett's success and acclaim under the "FKA twigs" stage name grew significantly during the decade following the 2014 lawsuit. See ECF No. 30, at 23-24; ECF No. 33, at 19. Unwinding that success and rebranding under a different stage name would not be a "simple and inexpensive task." See Gucci Am., Inc. v. Guess?, Inc., 868 F. Supp. 2d 207, 244 (S.D.N.Y. 2012). To the contrary, allowing the Goods to assert the instant claims "would be inequitable [to Barnett] in light of" their decade-long period of apparent inaction. See Conopco, 95 F.3d at 192.

In sum, the Court finds that laches bars the Goods' assertion of trademark infringement under the Lanham Act and unfair competition under New York common law based on Barnett's use of "FKA twigs" and/or "Twigs" in connection with her musical recording and performance. The Court therefore dismissed those counterclaims and granted declaratory relief to that same effect.

**B. The Goods' Counterclaim Under 15 U.S.C. § 1119**

In addition to bringing trademark infringement and unfair competition claims, the Goods also seek an order under 15 U.S.C. § 1119 directing the USPTO to deny Barnett's registration application. The Court concludes that § 1119 does not authorize such relief and dismisses this claim as well.

Section 1119 authorizes courts to act only with respect to already registered trademarks. The statute provides that "[i]n any action involving a registered mark the court may determine the right to registration, order the cancelation of registrations, in whole or in part, restore canceled registrations, and otherwise rectify the register with respect to the registrations of any party to the action." Id. Section 1119 "thus gives district courts authority to cancel registered marks, not pending trademark registrations." Adidas Am., Inc. v. Thom Browne Inc., 599 F. Supp. 3d 151, 162-63 (S.D.N.Y. 2022), aff'd 2024 WL 1953594 (2d Cir. May 3, 2024) (Summary Order).

Indeed, courts in this Circuit have repeatedly "rejected the argument that a district court can preempt the PTO and cancel a pending trademark application." Id.; see also Groq, Inc. v. Groq Health, Inc., No. 1:23-CV-08325-MKV, 2025 WL 934938 (S.D.N.Y. Mar. 27, 2025); Khaled v. Bordenave, No. 18 CIV. 5187, 2019 WL 1894321 (S.D.N.Y. Apr. 29, 2019).

Barnett does not have a registered trademark; she has a pending application with the USPTO. Under § 1119, the Court has no authority to order the USPTO to deny that application. The Court therefore dismisses the Goods' § 1119 counterclaim.

**C. Barnett's Remaining Requested Relief**

While Barnett's motion for judgment on the pleadings largely focuses on laches, her complaint seeks considerably broader relief. This includes a declaration that her use of "FKA twigs" does not, and has never, infringed on the Goods' trademark, as well as a declaration that her use of "FKA twigs" is not likely to cause confusion with the Goods' use of "The Twigs." See Compl. at 35-36. Barnett also seeks injunctive relief preventing the Goods from interfering with her use of "FKA twigs" and from opposing her USPTO application. Id. at 36.

The Court concludes that Barnett has not established her entitlement to judgment on the pleadings as to this additional relief. Viewed in the light most favorable to the Goods as the non-moving party, the pleadings are insufficient to establish

non-infringement as a matter of law. At this stage, Barnett is therefore entitled to a declaration that the Goods' Lanham Act and unfair competition claims are barred by laches. Nothing further.

## IV. Conclusion

For the foregoing reasons, the Court issued its July 28, 2026 "bottom-line" order.

New York, NY
August 18, 2026

JED S. RAKOFF, U.S.D.J.